FILED
2017 Sep-21  PM 04:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **PHILLIP JASON PARKER, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.:  5:14-CV-2247-VEH** |
| | ) |
| **HEALTHCARE INVESTMENT** | ) |
| **GROUP, INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

## I.    Introduction

This case arises under the Fair Labor Standards Act ("FLSA"). The Court approved the settlement of Plaintiffs' underlying FLSA overtime and willfulness claims on October 26, 2016. (Doc. 93). Still remaining for the Court to resolve are Plaintiffs' Motion for Attorneys' Fees and Expenses (doc. 96) (the "Fee Motion") and Defendants' Motion To Strike (doc. 102) (the "Strike Motion"). The parties have filed their supporting and opposing materials. (Docs. 97-98, 101, 104). For the reasons stated below, the Fee Motion is **GRANTED** as modified herein and the Strike Motion is **DENIED**.

## II.    Plaintiffs' Fee Motion

### Fee Motion Background

Plaintiffs Philip Jason Parker, Carolyn England, Buffy R. Dulaney, William D. McGee, Maisie Slaughter, and Carrie Hannah Borden (the "Named Plaintiffs") initiated this action against Defendants on November 20, 2014. (Doc. 1). On December 30, 2014, the Named Plaintiffs filed an Amended Collective Action Complaint (doc. 9) that asserted overtime as well as uncompensated-time violations of the FLSA. (*See generally id.*). The Named Plaintiffs further alleged that Defendants engaged in retaliatory conduct against them and that their FLSA violations were willful. *Id.*

On May 6, 2015, the Court granted the Named Plaintiffs' Motion for Conditional Certification. (Doc. 37). Over the course of the litigation, an additional 27 Plaintiffs consented to joining the case and, at the highest level, counsel were representing a total of 33 Plaintiffs. On October 20, 2015, the parties engaged in mediation, but were unsuccessful in reaching a resolution of the litigation at that time. (Doc. 68).

Subsequently, however, the parties reached a good-faith compromise and presented it to the Court. As set out in the Order Approving FLSA Settlement, judgment was entered in favor of Plaintiffs "in the amount of $208,328.50, plus

reasonable attorneys' fees and expenses in an amount to be determined by the Court . . . ." (Doc. 93 at 2). Under the terms of the parties' settlement, this payment to Plaintiffs represents "full relief of recorded unpaid overtime compensation and liquidated damages for same to which they are entitled." (Doc. 90 at 3).

In their Fee Motion, Plaintiffs are seeking $344,501.81 in attorneys' fees (doc. 96 at 4 ¶ 9) and $15,498.19 in expenses (*id.* ¶ 8) for a total amount of $360,000.00. (Doc. 96 at 5 ¶ 11). "[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).[1] Plaintiffs bear the burden of "establishing

---

[1]  In *Norman*, the Eleventh Circuit acknowledged the evolving views about the continued usefulness of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) to the attorney fee inquiry, in light of a series of Supreme Court and Eleventh Circuit decisions. *Norman*, 836 F.2d at 1298-99 (discussing cases relevant to the post-*Johnson* legal framework. Those decisions culminated in the understanding that, with very limited exceptions, "the lodestar as calculated in *Hensley* presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2–106 (1980) and adopted in *Johnson* . . . ." *Norman*, 836 F.2d at 1299; *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9, 103 S. Ct. 1933, 1940 n.9, 76 L. Ed. 2d 40 (1983) ("[M]any of the[ *Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."). Nonetheless, the Eleventh Circuit "still believe[s] that at least some of the *Johnson* factors have utility in establishing the hourly rate. *Id.* The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

3

entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. Concerning the reasonableness of a lawyer's hourly rate, the Eleventh Circuit has explained:

> A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Blum v. Stenson*, 465 U.S. at 895-96 n.11, 104 S. Ct. at 1547 n.11. *Accord, Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir. 1985). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *NAACP v. City of Evergreen*, 812 F.2d at 1338. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. *Blum*, 465 U.S. at 896 n.11, 104 S. Ct. at 1547 n.11. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. *See Hensley*, 461 U.S. at 439 n.15, 103 S. Ct. at 1943 n.15. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

*Norman*, 836 F.2d at 1299 (emphasis added).

Plaintiffs' fee calculation consists of attorney time and paralegal time from two separate law firms–Wiggins Childs ("WC") (formerly known as Wiggins Childs Quinn & Pantazis, LLC) (doc. 96-1 at 4 ¶ 4)[2] and Guin, Stokes & Evans ("GSE"). (*Id.*

---

[2] All page references to Doc. 96-1 correspond with the Court's CM/ECF numbering system.

at 5 ¶ 5). The hourly rates proposed by Plaintiffs for approval are:

- $450 for WC Attorney Rocco Calamusa, Jr. ("Mr. Calamusa");

- $400 for WC Attorney Kevin Jent ("Mr. Jent");

- $125 for WC Paralegal Karen Allen ("Ms. Allen");

- $125 for WC Paralegal Traci Wiggins ("Ms. Wiggins");

- $425 for GSE Attorney Dawn Evans ("Ms. Evans");

- $400 for GSE Attorney Rex Slate ("Mr. Slate"); and

- $175 for GSE Paralegal Tressy Wilson ("Ms. Wilson").

(Doc. 96-1 at 7-10 ¶¶ 9-13).

The hours claimed by Plaintiffs are:

- 328.90 for Mr. Calamusa;

- 186.25 for Mr. Jent;

- 103.10 for Ms. Allen;

- 8.70 for Ms. Wiggins;

- 388.20 for Ms. Evans;

- 28.40 for Mr. Slate; and

- 14.00 for Ms. Wilson.

In arriving at their requested total award (*i.e.*, fees plus expenses) of $360,000.00, Plaintiffs explain:

5

> The total fees accrued to date are $415,275.00. This amount is comprised of attorney and paralegal time for both the Wiggins Childs firm and the Guin, Stokes & Evans firm. However, Plaintiffs' counsel is only seeking $344,501.81 in fees, plus expenses in the amount of $15,498.19, as an agreed cap of $360,000.00 under the settlement. *See* Settlement Agreement ¶ C (Doc. 92-1). Plaintiffs' counsel has reduced its fees as part of the settlement in this matter. The total fee sought represents a $70,774 (17%) discount on the lodestar to date. Thus, should the Court reduce the amount of expenses allowed, Plaintiffs' counsel should still receive the full amount of $360,000.00 allowable as part of their fee based on the total amount of fees incurred in this case.

(Doc. 96-1 at 13 ¶ 19 (emphasis omitted)).

Defendants dispute the reasonableness of Plaintiffs' suggested rates and claimed hours that comprise Plaintiffs' reduced fee amount of $344,501.81. (Doc. 97 at 5).[3] Under Defendants' approach, Plaintiffs' total fee award would be decreased from $344,501.81 to $201,415.50–a reduction of 25% or $103,818.75 from Plaintiffs' original pre-cap calculation of 415,275.00. (Doc. 97 at 16). *Id.*

In accordance with the attached revisions – and for the following reasons – the Court will award Plaintiffs $360,000.00 in reasonable attorneys' fees and expenses.

## Reasonableness of Hourly Rates

Mr. Calamusa's affidavit offered in support of his hourly rate substantiates that he was admitted to the Alabama State Bar in 1993 and that he has over 20 years experience as a litigator primarily "in the fields of discrimination, wage and hour, and

---

[3] All page references to Doc. 97 correspond with the Court's CM/ECF numbering system.

civil rights." (Doc. 96-1 at 3 ¶ 3). Mr. Calamusa's affidavit further confirms that Mr. Jent was admitted to practice law in 1996 and that he has "more than 20 years experience in employment related matters." (*Id.* at 96-1 at 7 ¶ 11). Mr. Calamusa's affidavit also includes evidence of the rates charged by some of Plaintiffs' counsel for hourly, non-contingent labor/employment matters (doc. 96-1 at 12-13 ¶ 18) as well as examples of comparable rates that were approved in other fee-shifting cases filed in the Northern District of Alabama. (*Id.* at 10 ¶ 15, 11 ¶ 16).

Ms. Evans's affidavit offered in support of her rate substantiates that she was admitted to the Alabama State Bar in 1998 and that she has over 15 years experience as a litigator in "the areas of [FLSA], securities, arbitration/litigation, employment discrimination litigation, complex litigation, and corporate/business litigation." (Doc. 96-2 at 3 ¶ 2).[4] Ms. Evans's affidavit further confirms that Mr. Slate was admitted to practice law in 1996 and that he has 20 years experience in "the areas of products liability, nursing home litigation, vehicle crash worthiness litigation, business litigation, medical malpractice and class actions." (Doc. 96-2 at 5 ¶ 9).

In opposing Plaintiffs' suggested hourly rates, Defendants contend that the appropriate legal market for determining reasonable rates is the Decatur/Morgan County market (because this is a Northeastern Division case) and not the rates

---

[4] All page references to Doc. 96-2 correspond with the Court's CM/ECF numbering system.

applicable in the Birmingham/Southern Division market which Defendants maintain are significantly higher. In setting the attorney hourly rate between $225 and $275, Defendants rely upon the affidavit of Barnes F. Lovelace, Jr. ("Mr. Lovelace"). (Doc. 97 at 8); (*see also* Doc. 98-1 at 2-4 (attaching Mr. Lovelace's hourly rate affidavit)).

Mr. Lovelace has been licensed as an attorney in Alabama since 1983 and currently practices in Decatur, Morgan County, Alabama. (Doc. 98-1 at 2 ¶ 2; *id.* at 3 ¶ 3).[5] Without citing to any specific cases to substantiate his range estimate, Mr. Lovelace opines that "a reasonable hourly rate for an attorney of substantial skill and experience in Morgan County, Alabama to prosecute an FLSA collective action in a straightforward failure to pay overtime case would be anywhere from $225 per hour to $275 per hour." (Doc. 98-1 at 4 ¶ 8). Mr. Lovelace does not give an opinion about a reasonable paralegal rate.

Relying upon the affidavit of David J. Canupp ("Mr. Canupp"), a defense attorney in this case, Defendants request a reduction to $100.00 per hour for all paralegal time. (Doc. 97 at 9); (*see also* Doc. 98-2 at 3 ¶ 4 ("Rates for paralegals in the northern part of Alabama typically vary from around $75.00 to $100.00 per hour."); *id.* ("Based on my familiarity with the rates commonly charged in the Northeastern Division of the Northern District of Alabama, I am of the opinion that

---

[5] All page references to Doc. 98-1 correspond with the Court's CM/ECF numbering system.

$100 per hour represents a normal and customary rate for an experienced paralegal.")). Mr. Canupp's affidavit does not refer to any specific cases in which a court has determined that the paralegal rate in the Northeastern Division is consistent with his opinion.

The thrust of Defendants' contention is that even though Plaintiffs retained Birmingham counsel to represent them, using Birmingham, Southern Division, or District-wide rates is, nevertheless, unreasonable. Instead, Defendants contend that the prevailing market rate should be tied to the Morgan County and/or Northeastern Division area which they assert are substantially lower.[6] Thus, both sides geographically define the applicable legal market differently.

In *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489 (11th Cir. 1994), the Eleventh Circuit rejected the plaintiffs' argument that the hourly rate should be tied to the market where the lawyers primarily practiced rather than the place where the case was filed. As the *Cullens* court explained:

> [Plaintiffs] contend the district court erred in using Macon, Georgia as the relevant market for the hourly rate to be used in the computation of the lodestar figure. <u>The rate of attorney's fees is that of the place where the case is filed</u>. *See Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983). The case, although transferred in 1985 to a judge of the Northern District, based in Atlanta, was initially filed in Macon.

---

[6] As pointed about above, Mr. Lovelace defines the relevant legal market for attorneys to be Morgan County, Alabama, and Mr. Canupp defines the relevant legal market for paralegals to be the Northeastern Division.

> Plaintiffs assert Atlanta was the appropriate market because there were no lawyers in Macon with the expertise to handle their case. The district court did not err in focusing on whether there were attorneys in Macon with the ability to handle plaintiffs' individual claims rather than the proposed class action. <u>Nor did it err in finding that plaintiffs did not meet their burden of showing a lack of Macon lawyers willing or able to handle their individual claims</u>.

*Cullens*, 29 F.3d at 1494 (emphasis added).

In their reply, Plaintiffs have countered Defendants' Morgan County/Northeastern Division rate evidence by offering affidavits from two Huntsville attorneys, John Wilmer ("Mr. Wilmer") and Rebekah McKinney ("Ms. McKinney"). (Doc. 101 at 3); (*see also* Doc. 101-1 at 2-6 ¶¶ 1-9 (attaching Mr. Wilmer's hourly rate affidavit));[7] (*see also* Doc. 101-2 at 2-7 ¶¶ 1-8(a)-(c) (attaching Ms. McKinney's hourly rate affidavit)).[8] Both Mr. Wilmer and Ms. McKinney opine that there are very few plaintiffs' attorneys in the Decatur/Huntsville legal market who are willing to take on FLSA collective action cases such as this one. (Doc. 101-1 at 4-5 ¶ 8); (Doc. 101-2 at 6-7 ¶ 8(c)). Pointing to these affidavits, Plaintiffs argue in their reply that "an exception [can apply] for a situation such as this one where Plaintiffs can show a lack of attorneys in the area who are willing and able to handle the claim." (Doc. 101 at 3).

---

[7] All page references to Doc. 101-1 correspond with the Court's CM/ECF numbering system.

[8] All page references to Doc. 101-2 correspond with the Court's CM/ECF numbering system.

The Court, consistent with *Cullens* and *Frazier*, agrees with Plaintiffs that an exception can sometimes apply. However, here, the Court finds that Plaintiffs have not met their burden of showing a lack of Northeastern Division lawyers who were willing or able to handle wage and hour cases on a collective basis. First, the opinions offered by Mr. Wilmer and Ms. McKinney are speculative and vaguely worded–indicating that <u>very few</u> attorneys exist in the Decatur/Huntsville market is <u>not</u> the same as stating that <u>no</u> attorneys exist. Second, based upon judicial experience, the undersigned has not found an absence of Decatur/Huntsville plaintiffs' attorneys who are willing to litigate FLSA collective actions. Third, Plaintiffs have not offered any evidence showing that they specifically had difficulty finding lawyers in the Decatur/Huntsville area to represent them. *Cf., e.g., Frazier v. City of Gadsden*, No. 4:13-CV-757-VEH, 2016 WL 2771128, at \*21 (finding that Birmingham/Southern Division rates applied in light of plaintiff's affidavit "demonstrating the difficulty he encountered in trying to retain a local attorney [located within the Middle Division] to represent him"). Therefore, the Court will apply the prevailing market rates applicable to cases filed in Decatur/Huntsville or the Northeastern Division of the Northern District of Alabama when deciding the reasonable rate.

Based upon his experience practicing law since 1975, Mr. Wilmer opines that

"a reasonable rate for defendant's counsel in the Northern District of Alabama for attorneys practicing exclusively in labor and employment law for more than ten (10) years ranges between $300 and $375 per hour" and that attorneys "practicing labor and employment law in Decatur and Morgan County charge the same rates as others practicing in the Northern District of Alabama." (Doc. 101-1 at 4 ¶ 6). Therefore, unlike the opinion offered by Mr. Lovelace, Mr. Wilmer indicates that he has not found an appreciable difference between the prevailing market rate for Decatur/Morgan County and other parts of the Northern District of Alabama with respect to the area of labor and employment law.

Mr. Wilmer further states that "due to the risks involved in taking contingency labor and employment cases, a reasonable rate would be at least $50 higher on both ends of the defendants' range." (Doc. 101-1 at 4 ¶ 7). Therefore, Mr. Wilmer's estimated hourly range for attorneys representing plaintiffs in FLSA collective actions (when factoring in that risk component) runs from $350 to $425 per hour. Mr. Wilmer does not cite to any Northeastern Division cases to substantiate either one of his estimated ranges, and he does not differentiate which rates correspond to which levels of experience. Although Mr. Wilmer opines that rates in the Decatur/Morgan County market are no different than the rest of the Northern District of Alabama, his estimated figures fall slightly below Plaintiffs' higher requested range of $400 to

$450 (that draws upon rates reported in Birmingham/Southern Division cases and/or rates that did not account for any division-related disputes or differences in the hourly rate).[9] Mr. Wilmer's rates are significantly above Defendants' lower range of $225 to $275 (that is limited to the Decatur/Morgan County market and which underlying affidavit also lacks any specific case examples).

Ultimately, the Court has relied on its own expertise in order to reach the appropriate hourly rate for Plaintiffs' counsel who all have greater than 10 years of legal experience. *See Norman*, 836 F.2d at 1303 (recognizing that a court "is itself an expert on the question and <u>may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of [testimony of] witnesses as to value</u>" (emphasis added) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)));[10] *see also Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman* and *Campbell* for the same proposition). The Court also considered the experience and reputation of the

---

[9] Although Ms. McKinney has given an opinion that the rates sought by Plaintiffs' counsel in the range of $400.00-$450.00 are consistent with the prevailing market rates in the Huntsville/Decatur market (doc. 101-2 at 4-6 ¶ 7), the Court's own experience belies her conclusion.

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

attorneys (as attested to by the affidavits and declarations)[11] the customary fees, the

evidence provided by both sides as to the reasonable hourly rate, the degree to which

opinions have been substantiated by examples of underlining comparable cases, and

the Court's own review of previous fee awards, including the hourly rate assessments

that the undersigned completed in the employment cases of *Maner v. Linkan, LLC*,

No. 4:12-CV-1088-VEH, (Doc. 50) (N.D. Ala. June 13, 2014), *aff'd*, 602 F. App'x.

489 (11th Cir. 2015) and *Frazier v. City of Gadsden*, *supra*.[12]

    With these considerations in mind, the Court finds that $375.00 is a reasonable

---

[11]  In evaluating the value of the affidavits offered by both sides under the lodestar approach, the Court is guided by the Eleventh Circuit's decision in *Norman*:

> The affidavits of Siegel and McPhillips both show that prevailing market rates are not necessarily as high as the $125 per hour figure requested. The affidavit of Ms. Boyd is based on court awards and negotiated settlements in other cases. Under *Johnson* such information would be relevant but under the lodestar approach it is not. For example, there is no assurance that the attorneys in those cases possessed similar skill, experience or reputation or that the case or clients were similar to the one at bar. Further, to the extent that fee applicants rely on an award made in the Northern District of Alabama, there is no evidence that the prevailing market rates in that area are the same as in Montgomery.

> The affidavits offered in opposition are also deficient. Messrs. Garrett and Novak do not attest that they have charged $65 or $70 an hour in civil rights cases. Further, their affidavits do not show that the rates to which they attest were charged in similar cases for similar clients by lawyers of similar skill, experience and reputation.

*Norman*, 836 F.2d at 1304-05 (emphasis added).

[12]  In *Frazier*, the lead lawyer for the plaintiff–with 20 years of legal experience– had proposed a rate of $425.00. 2016 WL 2771128, at *16, *18. The Court ultimately found $350.00 to be a reasonable hourly rate according to the range applicable to employment cases litigated in the Birmingham/Southern Division. 2016 WL 2771128, at *21.

hourly rate for all counsel of record–Messrs. Calamusa, Jent, Slate, and Ms. Evans–as it is in accordance with the prevailing Decatur/Huntsville or Northeastern Division range of rates (that in the undersigned's experience is typically somewhat lower than Birmingham or Southern Division rates, regardless of the practice area) for similar services by lawyers of reasonably comparable skills, experience, and reputation. In particular, all these lawyers have over 10 years in experience and are very close to each other in terms of their total years spent in practice (*i.e.*, ranging from 18 to 23 years). Also, the record does not reflect significant reputational (or other) evidence that supports an adjustment of this rate for any particular lawyer. Further, this hourly rate is within both ranges (*i.e.*, with or without the $50 per hour risk enhancement for representing plaintiffs in contingency cases) sworn to by Mr. Wilmer–one of Plaintiffs' rebuttal experts. *Cf. Maner*, 602 F. App'x. at 494 ("[T]he district court did not clearly err in setting lead counsel's rate at his normal billing rate of $385 and in the middle of the expert's range.").[13]

    As for paralegal time, the Court rejects Plaintiffs' proposed rates in part and

---

[13] As explained in *Frazier*, the lead plaintiff's lawyer in *Maner* (who has been practicing law since 1977) had requested an hourly rate of $450.00 in 2014. *Frazier*, 2016 WL 2771128, at *19. Although *Maner* was a Middle Division case and the plaintiff's attorneys were based in Birmingham, the defendant did not raise a division-based dispute over the appropriate market rate for the Court to apply. Instead, the defendant challenged the requested fees as grossly excessive because no discovery was conducted, the trial lasted 4 days, the worker's compensation appeal lasted less than 2 days, and the number of witnesses that testified for the plaintiff at trial was limited. *See Maner*, No. 4:12-CV-1088-VEH, (Doc. 43) (N.D. Ala. Oct. 23, 2013) (D's Response to Request for Attorney's Fee).

Defendants' counter-rate of $100.00 and concludes, based upon its judicial experience, that $125 is a reasonable hourly rate for all time attributable to Mses. Allen, Wiggins, and Wilson.

### Reasonableness of Hours Expended

Concerning the hours claimed by Plaintiffs, Defendants argue that Plaintiffs' lack of success on certain claims and block billing warrant an across-the-board reduction of 25%. (Doc. 97 at 15); (*see id.* ("Because plaintiffs' counsel engaged in the practice of block billing,[14] it is impossible to separate out exactly how much time they spent on unsuccessful claims or unnecessary discovery.")). Turning to Plaintiffs' lack of success on their off-the-clock and retaliation claims, *Hensley* makes it clear that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial

---

[14]  As an unpublished Eleventh Circuit panel has described this disfavored billing practice:

> "Block billing" occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task. In *Barnes*, we noted that block billing resulted in "imprecision" in an attorney's records and described it as a "problem" for which the opponent should not be "penalized," and approved the opponent's solution of dividing each day's hours by the number of tasks listed and assigning the quotient to each task. 168 F.3d at 429. Courts have also approved across-the-board reductions in block-billed hours to offset the effects of block billing.

*Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012); *see also Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999) ("The imprecision of the billing records submitted by the plaintiffs makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task in this litigation."); *id.* ("The records often lump together all the tasks performed by an attorney on a given day without breaking out the time spent on each task.").

relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." 461 U.S. at 440, 103 S. Ct. at 1943. Here, the Court is persuaded that because Plaintiffs obtained substantial relief as to their FLSA overtime and willfulness claims, a reduction due to lack of success on other parts of their case is inappropriate.

The Court also rejects Defendants' contention that a reduction is warranted because 7 Plaintiffs elected to dismiss their claims during the course of the litigation. In particular, the Court finds that any discovery-related time attributable to these 7 Plaintiffs is negligible. As Plaintiffs point out "[t]he dismissal of these seven Plaintiffs did not affect the amount of work done by Plaintiffs' counsel in answering discovery and propounding discovery to the defendants. These dismissed Plaintiffs did not answer their discovery and were already gone from the case by the time depositions took place." (Doc. 101 at 7). Further, in light of the above determinations, Defendants' request for a percentage-based decrease because of an inability to separate out time spent on unsuccessful claims and unnecessary discovery caused by alleged block billing is not warranted.[15]

As a general matter, courts in the Eleventh Circuit determine the reasonable hours expended by performing "a task-by-task examination of the hours billed."

---

[15] Defendants have not claimed that other parts of Plaintiffs' billing records are due to be reduced because of insufficient detail due to block billing.

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999) (citing *Loranger v. Stierheim*, 10 F.3d at 782-83). The Court did so in this case. In total, Plaintiffs have submitted time records reflecting 1057.55 hours of work expended in litigating the case. (Doc. 96-1 at 4-5 ¶ 5).[16]

As noted above, Plaintiffs have the burden of establishing the reasonableness of the hours spent on their case. *Norman*, 836 F.2d at 1303. Indeed, "fee counsel should [maintain] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* (citing *Hensley*, 461 U.S. at 437 n.12, 103 S. Ct. at 1941 n.12). "[W]here that party presents inadequate documentation the court may determine a reasonable award based on its own experience." *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (citing *Mills by Mills v. Freeman*, 118 F.3d 727, 734 (11th Cir. 1997), *superseded on other grounds by Eleventh Circuit appellate rule as stated in Gray ex rel. Alexander v. Bostic*, 507 F.3d 1321, 1327 n.2 (11th Cir. 2009)).

With these principles in mind, the Court concludes that Plaintiffs' counsel reasonably expended a total of 957.30 hours in litigating this case–a reduction of

---

[16] (328.90 + 186.25 + 103.10 + 8.7) = 626.95 in hours claimed by WC firm + (388.20 + 28.40 + 14.00) = 430.60 in hours claimed by GSE firm for a combined amount of 1057.55 in total number of compensable hours claimed.

99.85 hours or roughly 10% less than the 1057.55 in hours claimed by Plaintiffs as reasonable. Put more specifically, the Court allots that revised total number of hours to the following respective persons:

| **Attorney** | **Hours** |
|---|---|
| Mr. Calamusa | 301.40[17] |
| Mr. Jent | 166.95[18] |
| Ms. Evans | 343.65[19] |
| Mr. Slate | 21.90[20] |

| **Paralegal** | **Hours** |
|---|---|
| Ms. Allen | 98.00[21] |
| Ms. Wiggins | 8.50[22] |

---

[17] 328.90 in total claimed hours - 27.50 in unreasonably claimed hours = 301.40 in reasonably claimed hours.

[18] 186.25 in total claimed hours - 19.30 in unreasonably claimed hours = 166.95 in reasonably claimed hours.

[19] 388.20 in total claimed hours - 44.55 in unreasonably claimed hours = 343.65 in reasonably claimed hours.

[20] 28.40 in total claimed hours - 6.50 in unreasonably claimed hours = 21.90 in reasonably claimed hours.

[21] 103.10 in total claimed hours - 5.10 in unreasonably claimed hours = 98.00 in reasonably claimed hours.

[22] 8.70 in total claimed hours - .20 in unreasonably claimed hours = 8.50 in reasonably claimed hours.

Ms. Wilson                               14.00[23]

This quantity obviously represents a reduction from the submitted request. After reviewing the documentation provided by counsel, the Court found that many of the hours expended were not reasonably included in the total. In some instances, the Court found that the duties performed were clerical in nature and, therefore, not recoverable. *See, e.g., Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) ("The Eleventh Circuit has iterated that the efforts of a paralegal are recoverable 'only to the extent that the paralegal performs work traditionally done by an attorney.'" (citing *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (quoting *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982)))).[24]

In others, the recorded duties were not compensable as they involved tasks that were of no benefit to Plaintiffs, including time spent on the Fee Motion. Further, Plaintiffs' counsel sometimes provided insufficient detail for the Court to discern the nature and quality of the hours expended. Additionally, the Court disallowed all time attributable to travel. *See Maner*, 602 F. App'x at 492 (concluding that "district court

---

[23]  All 14 hours are reasonably claimed.

[24]  In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.

did not err in excluding as unnecessary the hours billed for her attorneys' travel"). In each of these situations, the Court discounted the total amount sought by the unreasonably claimed time.

Multiplying the hours reasonably expended by the reasonable hourly rate, the Court finds that the following modified lodestar calculations are appropriate:

| **Attorney** | **Hourly Rate** | **Hours** | **Lodestar Amount** |
| --- | --- | --- | --- |
| Mr. Calamusa | $375.00 | 301.40 | $113,025.00 |
| Mr. Jent | $375.00 | 166.95 | $ 62,606.25 |
| Ms. Evans | $375.00 | 343.65 | $128,868.75 |
| Mr. Slate | $375.00 | 21.90 | $ 8,212.50 |
| **Paralegal** | **Hourly Rate** | **Hours** | **Lodestar Amount** |
| Ms. Allen | $125.00 | 98.00 | $ 12,250.00 |
| Ms. Wiggins | $125.00 | 8.50 | $ 1,062.50 |
| Ms. Wilson | $125.00 | 14.00 | $ 1,750.00 |

Further, the total modified lodestar amount equals $327,775.00–$312,712.50 for attorneys[25] plus $15,062.50 for paralegals.[26]

---

[25] $375.00 X 833.9 = $312,712.50.

[26] $125.00 X 120.5 = $15,062.50.

## No Lodestar Adjustment Based Upon Results Is Appropriate

"After determining the lodestar amount as above, the Court is entitled to adjust the amount of final fees awarded in light of the results obtained through the litigation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (citing *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40; *Norman*, 836 F.2d at 1302). "If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308 (11th Cir. 2008) (quoting *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940). However, "there is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 130 S. Ct. 1662, 1669, 176 L. Ed. 2d 494 (2010).

The Eleventh Circuit provided particularly meaningful guidance on lodestar adjustments in *Norman* when it wrote:

> If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may

> simply reduce the award by some proportion. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised.

836 F.3d at 1302 (citing *Hensley*, 461 U.S. at 435 n.11, 103 S. Ct. at 1940 n.11). In accordance with the Eleventh Circuit's instructions in *Norman*, the Court looks to the scope of the litigation as a whole, focusing on the significance of the overall results achieved in light of the substantial hours expended in pursuing this case. With these considerations in mind, the Court finds that neither a result-based enhancement nor such a reduction to the lodestar amount is justified in this case.

### Reasonableness of Expenses Incurred

As set out above, Plaintiffs seek to recover expenses in the total amount of $15,498.19. The Court has reviewed the underlying documentation offered by Plaintiffs to substantiate these claimed expenses and finds that a reduction of $2,040.65 is appropriate due to either an insufficient explanation to support the expense or because the reimbursement sought relates to travel between Birmingham and Decatur and/or Huntsville. Concerning travel reimbursement for mileage and meals more specifically, in light of Plaintiffs' failure to demonstrate a lack of attorneys in their area who were willing to handle their claims pursuant to the

exception set out in *Cullens* above, those claimed travel expenses constitute "routine office overhead normally absorbed by the practicing attorney" and, consequently, are not reasonably recoverable under the circumstances of this case. *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999) (internal quotation marks omitted) (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983)). Thus, the Court finds that Plaintiffs' recovery for reasonable expenses should be $13,457.54 instead of $15,498.19.

## Plaintiffs' Total Award Due

Therefore, as recalculated above, the reasonable fee amount for Plaintiffs to recover is $327,775.00, and the reasonable expense amount is $13,457.54. However, these amounts will be paid over time under the terms of the parties' Settlement Agreement and the fees and expenses started in 2014. For these reasons, the Court finds that increasing each figure by 10% is appropriate. This means that, for expenses, Plaintiffs are entitled to recover an additional $1,345.75 in costs for a total of $14,803.29. Based upon the $360,000.00 negotiated cap, this leaves $345,196.71 with respect to attorney's fees. Adding 10% back into the above recalculated fee figure of $327,775.00 results in an additional $32,777.50 for a total fee revised figure of $360,552.50, which is greater than the cap remainder of $345,196.71. Thus, Plaintiffs' reasonable fee award is $345,196.71, and the total award due is

$360,000.00.

## III.   Defendants' Strike Motion

In their Strike Motion filed pursuant to FED. R. CIV. P. 6(c)(2), Defendants seek to strike the declarations of Mr. Wilmer and Ms. McKinney that Plaintiffs attached to their reply brief. (Doc. 102 at 1). Rule 6(c) covers motions, notices of hearing, and affidavits and states in pertinent part that "[a]ny affidavit supporting a motion must be served with the motion." FED. R. CIV. P. 6(c)(2). Referencing several different cases, Defendants contend that this Court should not consider the declarations of Mr. Wilmer and Ms. McKinney because they were untimely filed after Plaintiffs' Fee Motion was and they amount to an improper ambush on Defendants. (*See* Doc. 102 at 3 (citing *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-CV-515-TWT, 2015 WL 4092817, at *1 (N.D. Ga. July 7, 2015) (adopting magistrate judge's order and non-final report and recommendation) ("The purpose of Rule 6(c)(2) is to ensure that the party opposing a motion be given sufficient time to respond to affidavits filed by the moving party, thereby avoiding trial by ambush and undue delay in the case."))).

In opposition to the Strike Motion, Plaintiffs maintain that the declarations of Mr. Wilmer and Ms. McKinney were appropriately filed in rebuttal to Defendants' affidavit evidence offered to support Defendants' position that the Court should apply Morgan County/Northeastern Division rates as opposed to Birmingham/Southern

Division and/or Northern District of Alabama ones. (Doc. 104 at 2). Several cases Defendants cited acknowledge that evidence offered to rebut points made in an opposition is permitted by way of reply. *See, e.g., Carlisle*, 2015 WL 4092817, at *1 ("Affidavits filed with a reply brief are considered only for the 'limited purpose of responding to matters raised in the responses filed by the opposing parties.'"); *Tishcon Corp. v. Soundview Communications, Inc.*, No. CIV.A. 104CV524-JEC, 2005 WL 6038743, at *8 (N.D. Ga. Feb. 15, 2005) ("Namely, the affidavits attached to the reply briefs at issue in *Kershner* and *Shah* were considered only because the affidavits were submitted, specifically, for the limited purpose of responding to matters raised in the responses filed by the opposing parties."); *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1181, 1182 (S.D. Fla. 2015) (analyzing S.D. Fla. L.R. 7.1(c) which "provides that a reply memorandum 'shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without re-argument of matters covered in the movant's initial memorandum of law'" and finding that affidavit which "explicitly rebuts issues raised . . . in response to . . . original Motion," to comply with that local rule), *aff'd*, 839 F.3d 1003 (11th Cir. 2016); *cf. also ABCO Premium Fin. LLC v. Am. Int'l Grp., Inc.*, No. 11-23020-CIV, 2012 WL 3278628, at *4 (S.D. Fla. Aug. 9, 2012) ("While the 'raising of new issues and submission of new facts in reply brief is improper,' a court has the discretion to

26

consider the additional exhibits despite this 'procedural shortcoming.'" (quoting *Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273, 311 n.82 (S.D. Ala. 2006))), *aff'd*, 518 F. App'x 601 (11th Cir. 2013).

Defendants additionally argue that the Court should disregard the declarations of Mr. Wilmer and Ms. McKinney because they were improperly filed as part of Plaintiffs' reply as a way "to supplement the record" which was otherwise insufficiently supported. (Doc. 102 at 3); *see also Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) ("By 'satisfactory evidence,' we mean 'more than the affidavit of the attorney performing the work.'" (citing *Norman*, 836 F.2d at 1299)). Plaintiffs respond by maintaining that because their initial evidence offered in support of their Birmingham and Northern District of Alabama rates was satisfactory under Eleventh Circuit standards, striking the declarations of Mr. Wilmer and Ms. McKinney is not appropriate. (Doc. 104 at 4).

As set out above, the *Norman* court thoroughly explained how a fee movant meets the satisfactory evidence test and made it clear that evidence of rates actually charged or previously approved by a court meets the standard. *Norman*, 836 F.2d at 1299. Plaintiffs included evidence of the rates charged by counsel for hourly, non-contingent labor/employment matters (doc. 96-1 at 12-13 ¶ 18) as well as examples of comparable rates that were approved in other fee-shifting cases filed in the

Northern District of Alabama. (*Id.* at 10 ¶ 15, 11 ¶ 16). Accordingly, the Court finds that Plaintiffs' initial evidence was adequate to support the Fee Motion under *Norman* and that the declarations included in their reply were appropriately filed to rebut Defendants' division-based opposition to their Fee Motion.[27]

Accordingly, for these reasons, the Strike Motion is **DENIED**.

## IV.   Conclusion

Plaintiffs' Fee Motion is **GRANTED** as modified herein and Defendants' Strike Motion is **DENIED**. Accordingly, Plaintiffs are **HEREBY AWARDED** $360,000.00 in reasonable attorneys' fees and expenses. Further, the Clerk is **HEREBY DIRECTED** to place the court-annotated time and expense records attached to this Order under seal. Finally and consistent with the Order Approving FLSA Settlement (doc. 93 at 3), the Court will enter a separate final judgment order dismissing this action with prejudice.

**DONE** and **ORDERED** this the 21st day of September, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[27]   As illustrated above in *Maner*, not every attorneys' fees motion involves a division-based dispute over the relevant legal market for determining the prevailing hourly rate.